FILED

2013 Dec-19  PM 01:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### JASPER DIVISION

| | | |
|---|---|---|
| JANET LYLES OZMENT, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No.  6:12-cv-03534-HGD |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER, SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits (hereinafter DIB) and Supplemental Security Income (hereinafter SSI).  (Doc. 1).  The parties have consented to the jurisdiction of the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73.  (*See* Doc. 12).  Upon consideration of the administrative record and the memoranda of the parties, the court finds that the decision of the Commissioner is due to be AFFIRMED and this action DISMISSED.

## I.     Proceedings Below

Plaintiff filed an application for a period of disability and disability insurance benefits on December 4, 2009, in which she alleged that she became unable to work on March 2, 2009.  (Tr. 68, 116-17).  On February 26, 2010, these claims were initially denied by the agency.  (Tr. 69-74).  On March 24, 2010, plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which took place on May 31, 2011.  (Tr. 27-67).  On June 22, 2011, the ALJ issued a decision denying plaintiff's application.  (Tr. 8-21).  The Appeals Council denied plaintiff's request for review on August 1, 2012.  (Tr. 1-4).  After the Appeals Council denied plaintiff's request for review of the ALJ's decision, that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.  42 U.S.C. §§ 405(g), 1383(c)(3).

## II.     ALJ Decision

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that

significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526.  If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ still may find disability under the next two steps of the analysis.  The ALJ first must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v).  In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education and work experience.  20 C.F.R. § 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence in significant numbers, of jobs in the national economy that the claimant

can do given the RFC, age, education and work experience.   20 C.F.R. §§ 404.1520(g), 404.1560(c).

The ALJ strictly adhered to this decision-making protocol.  He made the following findings of fact and conclusions of law:

> 1.  The claimant last met the insured status requirements of the Social Security Act on December 31, 2009 (Ex. 9D);
>
> 2.  The claimant did not engage in substantial gainful activity during the period from her alleged onset date of March 2, 2009 through her date last insured of December 31, 2009 (20 C.F.R. § 404.1571 *et seq.*);
>
> 3.  The claimant has the following severe impairments: essential tremor, osteoarthritis, osteoporosis, carpal tunnel syndrome and restless leg syndrome (20 C.F.R. § 404.1520(c));
>
> 4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526);
>
> 5.  Through the date last insured, the claimant has a residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except she can lift, carry and push/pull twenty pounds occasionally and ten pounds frequently.  She can stand and walk combined for six hours in an eight-hour day and sit six hours in an eight-hour day.  She requires jobs that can be performed with a hand tremor that is exacerbated with stress, vibration or caffeine and she is unable to use her hands repetitively;
>
> 6.  Through the date last insured, the claimant was unable to perform any past relevant work (20 C.F.R. § 404.1565); and
>
> 7.   Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the

claimant could have performed (20 C.F.R. §§ 404.1569 and 404.1569(a)).

(Tr. 13-20).

The ALJ reviewed the medical records in great detail in arriving at his conclusions.  According to the ALJ, plaintiff's medical records establish a history of hypertension, gastroesophageal reflux disease, mild depression, anxiety disorder, external hemorrhoids, restless leg syndrome, hyperlipidemia, anemia, status post right carpal tunnel release, right elbow lateral epicondylar, cervical radiculopathy and essential tremor. (Tr. 13-14).  The ALJ noted that, when the plaintiff began treatment with Dr. Brian K. Hogan, M.D., in July 2008 for essential tremor, she reported that she had experienced tremors since childhood, but the symptoms had worsened rapidly.  She said that the symptoms affected her writing, holding objects such as utensils and her ability to cut hair.  She also claimed that she had some voice tremor when singing but denied problems initiating movements or a sensation of falling.  She reported that alcohol, Inderal and Xanax improved the tremor and that caffeine and lack of sleep made the tremor worse.  She was prescribed numerous medications over her course of treatment and, in November 2008, reported that she was 40 percent better. (Tr. 14).

In March 2009, she was diagnosed at Millport Family Practice with osteoporosis, osteoarthritis, gastroesophageal reflux disease and depression.  When

she returned in July 2009, her diagnoses included hypertension, dyslipidemia and gastroesophageal reflux.  Imaging of her lumbar spine revealed osteoporosis and osteoarthritis with minimal degenerative changes.  (*Id.*).

In July 2009, plaintiff also visited Dr. Hogan and reported that she had restless leg syndrome ("RLS") that had worsened at night and which now also occurred during the day if she lay down for a nap.  Her tremor movement was characterized as moderate with cup holding, and her mood and affect were described as normal.  (*Id.*).

In November 2009, she reported to Dr. Hogan that her tremor was no better, that it affected her work as a hair dresser, and that her RLS had worsened.  She also reported symptoms in her wrists and hands that Dr. Hogan noted as being consistent with carpal tunnel syndrome .  He recommended a nerve conduction study.  However, plaintiff declined to do this and was given wrist splints to wear at night.  Her tremor movement continued to be described as moderate with cup holding, and new medications were prescribed for her tremor and RLS.  (*Id.*).

In December 2009, plaintiff reported that the new medication had not helped her tremor, and the dosage was increased.  (*Id.*).  Although certain additional medical records were presented to the ALJ, he did not consider them because they relate to plaintiff's condition subsequent to the date she was last insured.  (*Id.*).  Therefore, they are not relevant.  The ALJ also considered plaintiff's mental impairments and concluded that they did not cause more than minimal limitation in her ability to

perform basic mental work activities.  Therefore, these limitations were considered to be non-severe.  (*Id.*).

Based on his consideration of the entire record, the ALJ concluded that, as of the date she was last insured, plaintiff maintained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that she can lift, carry and push/pull 20 pounds occasionally and ten pounds frequently.  She can stand and walk combined for six hours in an eight-hour day and sit six hours in an eight-hour day.  However, she requires jobs that can be performed with a hand tremor that is exacerbated with stress, vibration or caffeine, and she is unable to use her hands repetitively.  (Tr. 16).

## III.   Plaintiff's Argument for Reversal

Plaintiff seeks to have the Commissioner's decision reversed.  According to plaintiff, no treating or examining physician gave an opinion as to plaintiff's RFC, and the State Agency physician determined that there was insufficient evidence to render an opinion.  Thus, plaintiff asserts that the ALJ's RFC finding is not supported by sufficient evidence.  She asks that her claim be remanded with an instruction to obtain a physical capacity examination or medical source opinion statement from a treating or examining source to support any RFC findings.  (Pl. Br. at 7).

Plaintiff also asserts that the ALJ placed too much emphasis on her daily activities in concluding that these activities are not consistent with those of a disabled individual suffering from severe impairments.  Plaintiff notes that the ALJ concluded

that because she can occasionally cut hair and dress herself, but needs help with household chores, can wash, grocery shop, and drive for short distances, that this demonstrates that she is not disabled. Plaintiff states that these limited activities are not what would be expected of a viable work candidate and do not demonstrate that plaintiff is capable of work activity. She cites several Eleventh Circuit cases which find that performing light daily activities are not dispositive of a claim for disability. Thus, according to plaintiff, the ALJ's conclusion that plaintiff's daily activities demonstrate she is not disabled is not supported by substantial evidence and is not supported by Eleventh Circuit case law.

Plaintiff seeks a determination that the ALJ's decision is contrary to law in that it fails to properly obtain and consider the evidence of record. She seeks reversal of the ALJ's decision on the grounds that his findings are not based on substantial evidence and that proper legal standards were not applied. (Pl. Br. at 9-10).

## IV.   Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Brown*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence."

*Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, re-evaluate the evidence or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.    Discussion

Plaintiff was 54 years old at the time of the ALJ's decision in June 2011.  (Tr. 116).  She completed high school and barber school.  (Tr. 37).  According to plaintiff, she has been unable to work since March 2009, due to depression, anxiety, a shoulder problem, bilateral carpal tunnel syndrome and essential tremors, especially in her hands and legs.  (Tr. 31).  She was last insured for DIB benefits on December 31, 2009.

The ALJ determined that plaintiff had the following severe impairments: essential tremor, osteoporosis, osteoarthritis, carpal tunnel syndrome and restless leg syndrome. (Tr. 13). Based on this, the ALJ found plaintiff to have an RFC to perform light work with certain limitations set out above. He also found that plaintiff was unable to perform her past relevant work. (Tr. 20). However, after applying the Medical-Vocational Guidelines as a framework, and considering the testimony of a vocational expert ("VE"), the ALJ determined that she could perform jobs that existed in significant numbers in the national economy, such as parking lot cashier, gatehouse guard, storage facility rental clerk and receptionist. (Tr. 20-21). Based on this, the ALJ concluded that plaintiff was not disabled at any time from March 2, 2009, her alleged onset date, through December 31, 2009, the date she was last insured for DIB benefits. (Tr. 21).

Because plaintiff's eligibility for DIB benefits expired on December 31, 2009, she must demonstrate that she was disabled prior to that date. *See* 42 U.S.C. §§ 416(i)(3), 423(a) and (c); 20 C.F.R. §§ 404.101, 404.130 and 404.131; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

Plaintiff's first claim of error is that the ALJ's RFC is not supported by substantial evidence because no treating or examining physician gave an opinion as to plaintiff's RFC, and the State Agency physician stated that there was insufficient evidence to render an opinion.

RFC is a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments or related symptoms. 20 C.F.R. §§ 404.1545(a) and 416.945(a). RFC includes mental abilities, such as the ability to understand, remember and carry out instructions, or respond appropriately to supervision, coworkers and work pressure. *Id.* §§ 404.1545(c) and 416.945(c). The RFC is based on all the relevant evidence in the record, including any medical evidence, and is used in steps four and five of the evaluation process to determine what work the claimant can do. *Id.* §§ 404.1545(a)(1) and (5), 416.945(a)(1) and (5); *see also Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).

In assessing the claimant's RFC, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). The ALJ also must consider any findings of a state agency medical or psychological consultant, who is considered an expert, and must assign weight and give explanations for assigning weight the same way as with any other medical source. *See* 20 C.F.R. §§ 404.1527(e)(2) and 416.927(e)(2); SSR 96-6p, 1996 WL 374180 (July 2, 1996). In determining how much weight to give a medical opinion, the ALJ considers factors such as the examining or treating relationship, whether the opinion is well-supported, whether the opinion is consistent with the record, and the doctor's specialization. *See* 20 C.F.R. §§ 404.1527(c) and

416.927(c).  An opinion on an applicant's RFC is not a medical opinion, but rather a decision reserved to the Commissioner, to be based on medical sources.  20 C.F.R. § 404.1527(e)(2).

The ALJ noted that, in February 2010, shortly after plaintiff's eligibility for DIB had expired, plaintiff reported that she could wash clothes, clean, work cutting hair on a limited basis, cook, care for pets, shop, drive, read, watch television, go to church, visit, talk on the telephone, and perform personal care with some difficulty in shaving and feeding herself. (Tr. 16-17).  The ALJ also noted that plaintiff advised that she could not carry dishes to the table, remove them from the oven, iron or perform yard work because of tremors.  She also required assistance to write or fix things.  She could walk a half mile before stopping to rest and could pay attention for ten minutes and follow instructions somewhat.  Plaintiff said she tried several medications to control her tremors, but they had not helped.  (Tr. 17).

The ALJ also noted that plaintiff testified that the tremors were not as bad in March 2009 as they had become at the time of her testimony.  They had steadily worsened.  (*Id.*).  She stated that she had difficulty cutting hair and that she could not give permanents due to the way she had to hold things, and that she could not cut children's hair for fear of cutting them because they move around.  She also testified that both of her hands are going numb from the carpal tunnel syndrome, and she had undergone shoulder surgery.  Plaintiff testified that she could not eat with a spoon

because the tremors caused the food to shake off of it. She stated that she had to use both hands to drink.

After consideration of the evidence, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, he further found that plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with the RFC assessment set out above. (Tr. 18).

With regard to plaintiff's tremors, the ALJ stated that the medical evidence indicates that plaintiff has experienced tremors since childhood but that the symptoms are worsening. However, her tremors during the relevant period of March 2009 through December 2009 were characterized as only moderate. (Tr. 18). Dr. Hogan's notes from his examinations of plaintiff on July 15, 2009, and November 18, 2009, reflect that her tremors were "moderate with cup holding." (Tr. 244, 248).

In addition, the ALJ considered plaintiff's daily activities in finding that she is not disabled. The ALJ noted that plaintiff continues to cut hair, albeit only on a limited basis, but that she performs many daily activities without assistance, including most personal care, washing clothes and driving. The medical records for the relevant period reflect that other medications were recommended prior to deep brain stimulation of the thalamus, but that plaintiff testified she did not want surgery and

continues with conservative treatment by medication, seeing her physician about once every four to six months.  (Tr. 18).

The ALJ further noted that plaintiff testified that none of her physicians has placed any physical restrictions on her capability and they have told her to "do what she can."  (*Id.*).  According to the ALJ, the medical evidence does not support a complete inability to use her hands, and no medical restriction has been made to limit use of her hands or to limit any other physical activity.  The ALJ found that, although plaintiff testified to some limitations in using her hands due to the tremors, her allegations are not fully corroborated in medical evidence from the relevant period.  (*Id.*).

As for her carpal tunnel syndrome, Dr. Hogan recommended a nerve conduction study, but plaintiff did not want to proceed with this and was being treated conservatively with wrist splints for nighttime.  (Tr. 18-19).  The ALJ also noted that plaintiff testified she participates in many daily activities using her hands, including some cutting of hair.  Again, he states, no physician placed any physical restrictions on her activities.  Thus, the ALJ concluded that the medical evidence does not support a complete inability to use her hands.  Nevertheless, giving plaintiff the benefit of the doubt, her tremors and carpal tunnel syndrome have been considered in formulating the RFC by limiting her to work that does not require repetitive use of her hands.  (Tr. 19).

Turning to plaintiff's RLS, the ALJ stated that, although plaintiff alleged that the condition had worsened, there is no evidence that the condition has produced any functional limitations. He noted that, in November 2009, plaintiff told Dr. Hogan that she had stopped taking her medication for this condition, suggesting to the ALJ that the condition may not have been as severe as alleged at that point in time. (*Id.*).

The ALJ also considered plaintiff's alleged osteoarthritis and osteoporosis and noted that imaging showed only minimal degenerative changes and that there is no evidence that these conditions produced any significant functional limitations. No treating or consulting physician has indicated that the claimant experienced pain or other subjective symptoms to such a degree as to render her disabled. (*Id.*).

While plaintiff included a shoulder problem in her list of disabling conditions (Tr. 31), the records did not indicate that she had any severe discomfort from her shoulder until about March 2010, after the date when she was last insured. (Tr. 344). While plaintiff alleged some discomfort in December 2009, she had an intact rotator cuff and normal range of motion. (Tr. 345). Imaging of her shoulder showed no abnormality. (Tr. 345). Likewise, aside from a moderate tremor when holding a cup, plaintiff's physical examinations reflected that she had intact strength, normal gait, normal ability to concentrate, and no memory impairments. (Tr. 244, 247-48).

The ALJ accounted for plaintiff's difficulties with her hands by limiting her work to that which could be performed with a hand tremor that is exacerbated with

stress, vibration or caffeine, and which does not require repetitive use of her hands. (Tr. 16).

As noted above, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (*per curiam*). As for the opinion evidence in this case, the ALJ placed significant weight on plaintiff's treatment records during the relevant period and the objective diagnostic imaging in Exhibit 7F that showed no significant degenerative changes of the lumbar spine. However, he gave little weight to the opinion of the State Agency medical consultant (Exhibit 9F) that there was insufficient evidence to rate the severity of plaintiff's physical impairments because evidence received at the hearing level was sufficient to determine the severity within the meaning of the Social Security Act and regulations. (Tr. 19). The ALJ further held that the State Agency consultants supported the ALJ's finding that plaintiff is capable of performing some work activity. (*Id.*). Based on the medical records, the testimony of plaintiff and other information contained in the record, the ALJ was able to determine plaintiff's RFC.

Despite plaintiff's claim to the contrary, the ALJ's RFC findings do not need to be supported by an RFC assessment by a physician. *See Langley v. Astrue*, 777 F.Supp.2d 1250, 1252-58 (N.D.Ala. 2011). Under the current regulations, RFC is not a medical assessment. In 1991, 20 C.F.R. § 404.1545 was amended to delete

language referring to RFC as a medical assessment.  As recognized by the court in *Langley*, the current version of the regulation provides in relevant part: "'Your residual functional capacity is the most you can still do despite your limitations.  We will assess your residual functional capacity based upon all the relevant evidence in your case record.'" *Langley*, 777 F.Supp.2d at 1252 (quoting 20 C.F.R. § 404.1545).  Accordingly, the lack of an RFC supplied by an examining or treating physician regarding plaintiff's capacity to work is of no consequence. *See also Smith v. Colvin*, 2013 WL 4851190, *11 (N.D.Ala. Sept. 11, 2013).  The record provides substantial evidence to support the ALJ's determination that plaintiff has the RFC to perform light work with limitations, as set out above.

Plaintiff also challenges the ALJ's credibility findings, asserting that he placed undue emphasis on plaintiff's daily activities.  (Pl. Br. at 7-8).  However, this is not borne out by the record.  The ALJ considered plaintiff's daily activities in concert with the medical records and other information provided regarding plaintiff's impairments.

Furthermore, consideration of plaintiff's daily activities was proper.  Once an impairment has been established, as was the case here, 20 C.F.R. § 404.1529 provides that all evidence about the intensity, persistence and functionally limiting effects of pain or other symptoms must be considered in deciding the issue of disability. *See  Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).  Plaintiff's

daily activities were considered for this purpose.  Although a claimant's admission that she participates in daily activities for short durations does not necessarily disqualify the claimant from disability, *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997), that does not mean it is improper for the ALJ to consider a claimant's daily activities at all.  *See* 20 C.F.R. §§ 404.1529(c)(3)(i) and 416.929(c)(3)(i) (specifically listing the claimant's daily activities as one of the factors to consider in evaluating the claimant's symptoms).  The fact that plaintiff was able to cut hair on an occasional basis, dress, shower, dry her hair, wash clothes, prepare meals, grocery shop and drive are all factors that undermine any allegation that her hand tremors prevent her from doing any work consistent with the ALJ's RFC finding.

The ALJ also considered other factors such as the objective medical evidence, the nature of her treatment, and measures she took to relieve her symptoms in making his credibility determination.  (Tr. 18-19).  The ALJ noted that Dr. Hogan characterized her tremor movement as "moderate with cup holding" during the relevant time period (Tr. 18, 244, 248), and that her treatment for her tremors and other conditions had been conservative.  (Tr. 18-19).  For instance, rather than proceeding with a nerve conduction study for her carpal tunnel syndrome, plaintiff opted for wrist splints (Tr. 244), and elected treatment with medication over deep brain thalamus stimulation for treatment of her tremors.  (Tr. 18-19, 47, 306).  The ALJ may consider measures taken, or not taken, by a claimant to relieve symptoms.

*See* 20 C.F.R. § 404.1529(c)(3)(v). The Eleventh Circuit has stated "[a] doctor's conservative medical treatment for a particular condition tends to negate a claim of disability." *Sheldon v. Astrue*, 268 Fed. App'x 871, 872 (11th Cir. 2008) (citing *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996)). Thus, a conservative treatment for plaintiff's conditions would support a decision to not fully credit the extent of her subjective complaints.

## VI.   Conclusion

Accordingly, upon review of the administrative record, and considering all of the plaintiff's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. Therefore, that decision is AFFIRMED. A separate order will be entered.

DONE this 19th day of December, 2013.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE